Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| | | |
|---|---|---|
| Fritz E. Rodríguez Sallaberry<br><br>Recurrido<br><br>vs.<br><br>Evinmotor's PR Inc.<br><br>Peticionario | TA2025CE00524 | ***CERTIORARI***<br>procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2022CV04813<br><br>Sobre: Incumplimiento de Contrato, Acción Rescisoria, Daños |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de octubre de 2025.

Comparece ante nos, Evinmotor's PR, INC. (Evinmotor's o peticionario), quien presenta recurso de *certiorari* en el que solicita la revocación de la Resolución emitida el 31 de julio de 2025,[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante el referido dictamen, el foro primario declaró No Ha Lugar la Moción Solicitando Sentencia Sumaria presentada por el peticionario.

Examinada la solicitud de autos, la totalidad del expediente, así como el alegato de la parte recurrida y el estado de derecho aplicable ante nuestra consideración, expedimos el auto de *certiorari* y confirmamos la Resolución recurrida mediante los fundamentos que expondremos a continuación.

**-I-**

El 2 de junio de 2022, el señor Fritz E. Rodríguez Sallaberry (Sr. Rodríguez Sallaberry) instó una Demanda de incumplimiento

---

[1] Notificada el 1 de agosto de 2025.

de contrato, rescisión de contrato y daños y perjuicios contra Evinmotor's. En síntesis, alegó que, el 4 de junio de 2021 suscribió un Contrato de Compraventa con Evinmotor's, mediante el cual este le vendió un vehículo de motor marca Can-Am Maverick 2021, más varios accesorios por la suma de $45,654.88. En lo pertinente, sostuvo que, como parte de dicho acuerdo, el representante de venta de Evinmotor's, el Sr. Edwin Delgado, se comprometió y obligó a inscribir y registrar el vehículo objeto del Contrato, obteniendo además los derechos de tablilla, marbete e inspección de forma tal que dicho transporte pudiera ser utilizado en las vías públicas. Adujo que, el elemento de que el vehículo estuviera autorizado a transitar por la vía pública constituyó una parte esencial de su consentimiento para comprar el Can-Am. En esencia, explicó que, si bien el Contrato fue suscrito el 4 de junio de 2021, las partes dialogaron previo a esa fecha toda vez que el Sr. Rodríguez Sallaberry compró equipos opcionales que Evinmotor's le requirió tiempo para instalar.

Además, alegó que el 4 de junio de 2021, Evinmotor's le informó que estaba enviando la unidad comprada de sus facilidades al hogar del Sr. Rodríguez Sallaberry en grúa, no obstante, a eso de las siete (7) de la noche, un Oficial de la Policía de Puerto Rico detuvo la grúa y procedió a incautar el vehículo. Acentuó que de la investigación realizada por la Policía y el Departamento de Trasportación y Obras Públicas (DTOP) se desprende que el vehículo vendido por Evinmotor's al Sr. Rodríguez Sallaberry no era registrable para propósitos de obtener la documentación y certificación adecuada para transitar por la vía pública. Explicó que, posteriormente la Policía de Puerto Rico le comunicó que le entregaba el vehículo, pero que procedían a incautar la tablilla, licencia y marbete de este. En resumen, razonó que Evinmotor's mediante dolo, treta y/o engaño le ofreció

al demandante a obtener la documentación y permisos necesarios para que el vehículo vendido al Sr. Rodríguez pudiera transitar por la vía pública. Por ello, reclamó la suma de $50,000.00 por concepto de daños y angustias mentales sufridos productos del incumplimiento de la obligación de Evinmotor's. Además, solicitó la rescisión del Contrato de Compraventa con la devolución total del dinero pagado equivalente a $45,654.88 más los intereses devengados.

El 7 de octubre de 2022, Evinmotor's presentó una Moción Solicitando Desestimación a tenor con la Regla 10.2 de Procedimiento Civil. En síntesis, adujo que, la reclamación del Sr. Rodríguez Sallaberry no justifica la concesión de un remedio, toda vez que Evinmotor's única y exclusivamente se obligó a vender el Can-Am más ciertos accesorios, y no se obligó a registrar, inscribir, obtener licencia y/o título a favor del Sr. Rodríguez Sallaberry por lo que Evinmotor's no incurrió en culpa y/o negligencia. El 9 de noviembre de 2022, el Sr. Rodríguez Sallaberry oportunamente presentó una Oposición a Solicitud de Desestimación bajo la Regla 10.2 de Procedimiento Civil.

El 10 de noviembre de 2022, el Tribunal de Primera Instancia emitió una Orden donde informó que se acogió la solicitud de desestimación como una solicitud de sentencia sumaria. Por lo que requirió que las partes presentaran moción conjunta exponiendo los asuntos en controversia y los hechos esenciales y pertinentes sobre los cuales no hay controversias.

Posteriormente, el 16 de diciembre de 2022 el Sr. Rodríguez Sallaberry presentó una Demanda Enmendada. Entre otros asuntos, alegó que para inscribir un vehículo nuevo en el DTOP es necesario el recibo del pago de arbitrios al Departamento de Hacienda por dicha unidad, el cual únicamente está en posesión de Evinmotor's. Destacó que, realizó un pago en efectivo por la

suma de $1,500.00 a Evinmotor's, que no aparece detallado o desglosados en el Contrato. Planteó que dicho pago se efectuó para que Evinmotor's registrara el vehículo y lo transportara a su residencia una vez estuviera listo, incluyendo los derechos de tablilla, marbete e inspección. Explicó que, parte de los accesorios adicionales que Evinmotor's recomendó, vendió e instaló al vehículo fue un "Street kit" necesario para que el vehículo pasara la inspección de CESCO para obtener tablilla, marbete y licencia. El referido "Street kit" contiene luces de frenos, espejo retrovisor, luces direccionales, cristal delantero completo, cinturones de seguridad, entre otras cosas.

El 10 de enero 2023 el foro primario emitió una Resolución mediante la cual declaró No Ha Lugar la solicitud de desestimación al amparo de la Regla 10.2 (5) de Procedimiento Civil, 32 LPRA Ap. V. A su vez, dicho foro detalló cinco (5) hechos pertinentes y materiales en controversia, a saber: 1) si la parte demandante le pagó a la parte demandada para realizar las gestiones de inscripción del vehículo en el Departamento de Transportación y Obras Públicas; 2) si la parte demandada le representó al demandante que dicho vehículo podría ser utilizado para transitar por la vía pública; 3) quién realizó las gestiones para la inscripción del vehículo, adquisición de marbete y tablilla; 4) si la parte demandada mediante treta y engaño adquirió la tablilla, licencia y marbete del vehículo; y 5) si la parte demandada cometió dolo o engaño en el procedimiento de venta del vehículo de motor Marca Can-Am.[2]

En respuesta, el 25 de enero de 2023 Evimotor's presentó su Contestación a Demanda Enmendada donde negó todas las alegaciones. Luego de varios trámites procesales, el 28 de febrero

---

[2] Apéndice de la Petición de Certiorari, en la entrada (32) del Sistema de Administración y Manejo de Casos del Tribunal de Primera Instancia.

de 2025, Evinmotor's presentó una Moción Solicitando Sentencia Sumaria.[3] En esencia, alegó que Evinmotor's no solicitó, requirió, realizó, gestión alguna en favor del Sr. Rodríguez Sallaberry en relación con alguna licencia, inspección, registración, titulo y/o marbete sobre el vehículo en cuestión. Además, sostuvo que tampoco recibió una suma adicional en efectivo de $1,500.00 en relación con el Contrato. En particular, afirmó que suponiendo que Evinmotor's haya expresado verbalmente al Sr. Rodríguez Sallaberry que se obligaría a realizar las gestiones de registración de la unidad, lo cierto es que no existe evidencia documental y/o testifical que demuestre dicha obligación "verbal" entre las partes.

Así pues, planteó que el Sr. Rodríguez Sallaberry no cuenta con evidencia documental sobre las palabras y/o argumentos que utilizó Evinmotor's para alegadamente engañarlo a firmar el Contrato. A su vez, alegó que el Sr. Rodríguez Sallaberry "se limita a unas meras alegaciones sobre si el Can-Am era o no registrable, o si podía o no transitar por las vías públicas, alegaciones que fueron derrotadas mediante prueba directa e indubitada mediante documentos públicos emitidos por el gobierno de Puerto Rico". En esencia, adujo que el Sr. Rodríguez Sallaberry no aportó prueba alguna que en efecto el peticionario lo haya engañado con relación con el Can-Am, ni tampoco indica cuales fueron las alegadas maquinaciones insidiosas emitidas por Evinmotor's para convencerlo para que comprara el Can-Am. En resumen, afirmó que no existe controversia real sustancial en cuanto a que el Sr. Rodríguez Sallaberry no tiene una causa de acción en su contra.

Por su parte, el 8 de abril de 2025 el Sr. Rodríguez Sallaberry presentó una Moción en Oposición Sentencia Sumaria.[4] Entre otros asuntos, argumentó que continúan existiendo las

---

[3] Apéndice de la Petición de Certiorari, en la entrada (82) del Sistema de Administración y Manejo de Casos del TPI.

[4] Apéndice de la Petición de Certiorari, en la entrada (87) del Sistema de Administración y Manejo de Casos del TPI.

mismas controversias de hecho que fueron consignadas en la Resolución emitida el 10 de enero 2023. En síntesis, explicó que el vehículo nunca estuvo en su posesión, y que tampoco tuvo en su poder documento alguno relacionado al registro del vehículo. Además, afirmó que no se requiere prueba médica ni documental para probar daños, sufrimientos y angustia mental; sino que basta con su testimonio. En particular, sostuvo que "como parte del precio pagado a él se le iba a vender y entregar un vehículo que pudiera transitar por la vía pública teniendo título, licencia y registración para esos propósitos". Además, enfatizó que es un hecho incontrovertido que, para la fecha en que se firmó el documento de "buyers order" el 4 de junio de 2021, ya el vehículo en controversia estaba registrado en el DTOP. Reiteró que, el vehículo tenía Titulo desde el 4 de mayo de 2021, al igual que tenía licencia y marbete expedido y pagados desde el 5 de mayo de 2021.

Examinados los argumentos de las partes, el 31 de julio de 2025, el foro primario emitió una Resolución, notificada al día siguiente, en la que declaró No Ha Lugar la Moción Solicitando Sentencia Sumaria.[5] En lo pertinente, formuló 12 Determinaciones de Hechos Materiales en Controversia:

> *En la Resolución del 10 de enero de 2023 se identificaron las siguientes controversias de hechos, las cuales entendemos que aún subsisten:*
>
> *1. Si la parte demandante le pagó a la parte demandada para realizar las gestiones de inscripción del vehículo en el DTOP.*
> *2. Si la parte demandada le representó al demandante que dicho vehículo podría ser utilizado para transitar por la vía pública.*
> *3. Quién realizó las gestiones para la inscripción del vehículo, adquisición de marbete y tablilla.*
> *4. Si la parte demandada mediante treta y engaño adquirió la tablilla, licencia y marbete del vehículo.*
> *5. Si la parte demandada cometió dolo o engaño en el procedimiento de venta del vehículo de motor Marca Can-Am.*

---

[5] Apéndice de la Petición de *Certiorari*, en la entrada (95) del Sistema de Administración y Manejo de Casos del TPI.

*Asimismo, tras evaluar la moción dispositiva junto a su oposición, añadimos los siguientes hechos pertinentes que se encuentran en controversia:*

*6. Si EPR asumió —verbalmente o por escrito— la obligación de gestionar el registro, tablilla, licencia y marbete del vehículo adquirido por el señor Rodríguez Sallaberry, así como su entrega en condiciones aptas para circular legalmente por la vía pública.*

*7. Si la condición de que el vehículo en controversia pudiera transitar por la vía pública fue una cualidad prometida y convenida por EPR y el señor Rodríguez Sallaberry.*

*8. Si EPR se comprometió y/o coordinó el servicio de traslado en grúa del vehículo comprado por el demandante de San Juan a Cabo Rojo, y si el demandante pagó por dicha gestión.*

*9. Si el demandante realizó un pago adicional de $1,500 a la parte demandada y, de haberlo hecho, su propósito.*

*10. La razón por la cual el DTOP expidió el título, licencia y marbete del vehículo con fecha del 4 de mayo de 2021 a nombre del señor Rodríguez Sallaberry un mes antes de la compraventa efectuada el 4 de junio de 2021, cuando el vehículo aún era propiedad de la parte demandada.*

*11. Si el vehículo no es registrable para transitar la vía pública, por qué y cómo se obtuvo la licencia y el marbete.*

*12. Si el señor Rodríguez Sallaberry sufrió daños reales y cuantificables, y a cuánto ascienden tales daños si se determina que existen.*

En reacción, el 18 de agosto de 2025, el peticionario presentó una Moción Solicitando Reconsideración de Resolución la cual fue declarada No Ha Lugar mediante Resolución por el foro primario el 28 de agosto de 2025.[6]

Inconforme aún, el 29 de septiembre de 2025, Evinmotor's recurrió ante nos mediante petición de *certiorari*, y plantea la comisión de los siguientes errores:

A. *Erró el Honorable TPI al declarar No Ha Lugar la Moción Solicitando Sentencia Sumaria por entender que existen controversias sobre las obligaciones del peticionario hacia el recurrid[o] durante la compraventa del Ca[n]-Am.*

B. *Erró el Honorable TPI al declarar No Ha Lugar la Moción Solicitando Sentencia Sumaria, a pesar de que el peticionario demostró que no existen hechos medulares en controversias sobre las alegaciones de la demanda enmendada, específicamente en cuanto*

---

[6] Notificada en igual fecha.

*a los derechos y obligaciones de las partes con relación a la compraventa del Can-Am.*

*C. Erró el Honorable TPI al declarar No Ha Lugar la Moción Solicitando Sentencia Sumaria, ignorando el hecho de que las partes pactaron que cualquier manifestación entre las partes durante la compraventa no subsistirá a menos que se recoja por escrito, por cuanto lo que conste por escrito constituyen los únicos derechos y obligaciones entre las partes, de lo contrario no sería vinculante, por cuanto al no constar por escrito la obligación del peticionario a realizar gestiones de registro, inscripción del Can-Am, no proceden remedios a esos efectos.*

Sometido el recurso, el 30 de septiembre de 2025, este Tribunal emitió una Resolución en la cual ordenamos a los recurridos a presentar su respectivo alegato en un término a vencer el 9 de octubre de 2025. De conformidad con lo anterior, el Sr. Rodríguez Sallaberry sometió su Alegato en Oposición a Petición de *Certiorari*. Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

-II-

-A-

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 486-487 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Para poder ejercer sabiamente nuestra facultad discrecional en la consideración de los asuntos planteados mediante dicho recurso, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, dispone lo siguiente:

*El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:*

*(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
*(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.*
*(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*
*(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*
*(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
*(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
*(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

El Tribunal de Apelaciones solo intervendrá en el ejercicio de la discreción del Tribunal de Primera Instancia en aquellas situaciones en que se demuestre que este último: (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción o (3) se equivocó en interpretar o aplicar cualquier norma procesal o de derecho sustantivo. *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

**-B-**

La sentencia sumaria es el mecanismo adecuado para resolver aquellos casos que no ameritan la celebración de un juicio por no existir duda sobre hechos esenciales. *BPPR v. Cable Media,* 2025 TSPR 1, 215 DPR ___ (2025); *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 225 (2015). Este recurso propicia la solución justa, rápida y económica de las controversias. *Serrano Picón v. Multinational Life Ins.,* 212 DPR 981, 992 (2023); *González Santiago v. Baxter Healthcare,* 202 DPR 281, 290 (2019). Es decir, permite la ágil disposición de los casos sin la celebración de un juicio sujeto a la inexistencia de controversias genuinas de hechos materiales. *Birriel Colón v. Econo y otro,* 213 DPR 80, 90 (2023); *Segarra Rivera v. Int'l Shipping et al.,* 208 DPR 964, 979 (2022). Un hecho material es aquel que puede afectar el resultado de la

reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023).

Ahora bien, el mecanismo de sentencia sumaria no aplica a todos los escenarios. Su concesión corresponde cuando: (1) existen hechos materiales no controvertidos, (2) el promovido no puede prevalecer ante el derecho, y (3) el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Íd.*; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012). Asimismo, como regla general, "no es aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa". *Ramos Pérez v. Univisión*, 178 DPR 200, 219 (2010) (citando a *Soto v. Hotel Caribe Hilton*, 137 DPR 294 (1994)). Sin embargo, lo señalado previamente "no impide utilizar el mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención [...] cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales". *Íd.*

En particular, la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, faculta la presentación de una solicitud de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Cónsono con lo anterior, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. 3, instaura los requisitos de forma respecto a esta moción y su oposición. *Universal Ins. y otro v. ELA y otros*, 211 DPR 455, 472 (2023). El inciso (a) de la precitada disposición reglamentaria

establece las siguientes formalidades que debe exhibir la solicitud de sentencia sumaria:

> (1) *Una exposición breve de las alegaciones de las partes;*
> (2) *los asuntos litigiosos o en controversia;*
> (3) *la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;*
> (4) *una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;*
> (5) *las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y*
> (6) *el remedio que debe ser concedido.* 32 LPRA Ap. V, R. 36. 3(a).

Por su parte, quien presente el escrito de oposición a la sentencia sumaria también tiene que cumplir con los requisitos de la Regla 36 de Procedimiento Civil, *supra. Oriental Bank v. Caballero García, supra*, a la pág. 680. Así que, no podrá descansar solamente en aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar de forma específica. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede. 32 LPRA Ap. V, R. 36.3(c). Por ello, no debe asumir una actitud pasiva ni descansar en las aseveraciones o las negaciones. *Íd.*; *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Al contrario, la parte opositora debe establecer aquellos hechos controvertidos de la siguiente manera:

> *En la oposición a una solicitud de sentencia sumaria, el promovido debe, como parte de su carga, puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte una sentencia sumaria en su contra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición según exige la Regla 36.3. En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. León Torres v. Rivera Lebrón*, 204 DPR 20, 44 (2020) (citas omitidas).

No obstante, es menester explicar que, el hecho de que la parte promovida no presente prueba que controvierta la evidencia, no implica que la moción de sentencia sumaria procederá automáticamente si efectivamente existe una controversia sustancial sobre hechos materiales. *Acevedo y otros v. Depto. Hacienda y otros,* 212 DPR 335, 351 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 337 (2021). En este sentido, cualquier inferencia que surja de los hechos incontrovertidos debe efectuarse de la forma más favorable a la parte promovida. *Const. José Carro v. Mun. Dorado,* 186 DPR 113, 130 (2012).

Si una parte resulta inconforme con el dictamen de sentencia sumaria tiene derecho a recurrir a la etapa apelativa. En estos casos, nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. *Cruz, López v. Casa Bella y otros,* 213 DPR 980 (2024); *Birriel Colón v. Econo y otro, supra,* a la pág. 91. Es decir, ostentamos la facultad de examinar *de novo* el expediente y aplicar los criterios que exigen la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia interpretativa. *Roldán Flores v. M. Cuebas et al.*, *supra*, a la pág. 679. Empero, nuestra autoridad revisora es limitada, pues solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114 (2015). Ello, pues, carecemos de facultad para adjudicar hechos materiales en disputa, toda vez que esa tarea corresponde al foro primario. *Íd.*, a la pág. 115; *Vera v. Dr. Bravo,* 161 DPR 308, 335 (2004).

Los criterios a seguir por este tribunal, al atender la revisión de una sentencia sumaria dictada por el foro primario, han sido enumerados con exactitud por nuestro Tribunal Supremo. *Roldán*

*Flores v. M. Cuebas et al, supra,* a la pág. 679. A tenor con lo anterior, el Tribunal de Apelaciones debe:

> *1) examinar de novo el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, supra, y la jurisprudencia le exigen al foro primario;*
>
> *2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, supra;*
>
> *3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y*
>
> *4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.*

**-C-**

En nuestro sistema de derecho las obligaciones surgen de la ley, los contratos, cuasicontratos y de cualquier otra acción u omisión en el cual medie culpa o negligencia. Art. 1063 del Código Civil de Puerto Rico, 31 LPRA sec. 8984; *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024). Es por ello, que lo acordado en los contratos tiene fuerza de ley entre las partes, sus sucesores y terceros. Art. 1233 del Código Civil, 31 LPRA sec. 9754. A su vez, las partes pueden acordar cualquier cláusula contractual, siempre que no sea contraria a la ley, a la moral o al orden público. Art. 1232 del Código Civil 31 LPRA sec. 9753. Ese principio de libertad de contratación reconoce la autonomía de la voluntad de los contratantes. *VDE Corporation v. F & R Contractors*, 180 DPR 21, 33 (2010); *De Jesús González v. A.C.,* 148 DPR 255, 263 (1999).

Así pues, el contrato es el negocio jurídico bilateral mediante el cual dos o más partes expresan su consentimiento, conforme a las formas establecidas por la ley, con el propósito de crear, regular, modificar o extinguir obligaciones. Art. 1230 del Código Civil, 31 LPRA sec. 9751. Este se perfecciona en el momento en

que las partes manifiestan su consentimiento sobre el objeto y la causa, excepto cuando se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Art. 1237 del Código Civil, 31 LPRA sec. 9771. En consecuencia, toda persona que "de cualquier modo contraviene el tenor de su obligación, debe indemnizar los daños y perjuicios causados". Art. 1158 del Código Civil, 31 LPRA sec. 9303.

Para que un contrato se considere válido, se requiere que concurran tres elementos esenciales, a saber: (1) consentimiento de los contratantes, (2) objeto cierto del contrato y (3) la causa de la obligación que se establezca. *Cruz, López v. Casa Bella y otros*, *supra*, a la pág. 994; *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263 (2021). Por otro lado, un contrato puede ser nulo de su faz cuando hay ausencia total de consentimiento, o meramente anulable cuando existe algún vicio de la voluntad, y este fue determinante para su otorgamiento. Art. 286 del Código Civil, 31 LPRA sec. 6192. En lo pertinente, los vicios de la voluntad son: (1) el error, (2) el dolo, (3) la violencia y (4) la intimidación. Art. 285 del Código Civil, 31 LPRA sec. 6191. La prueba de la existencia del vicio y de su carácter incumbe a quien lo alega. Art. 286 del Código Civil, 31 LPRA sec. 6192.

En cuanto a los casos en los que se aduce que la voluntad del otorgante estuvo viciada por dolo, el causante de éste quedará sujeto a la indemnización de los daños y perjuicios resultantes. *Íd.* Nuestro Código Civil distingue entre dos tipos de dolo: (1) dolo incidental y (2) dolo grave. La distinción entre uno y otro radica en las circunstancias en las que ocurre el dolo, lo que a su vez determina el efecto que tendrá sobre el negocio jurídico. El dolo incidental es aquél que no tiene una influencia decisiva en la esencia de la obligación. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 887 (2008). En otras palabras, ya la parte tenía la voluntad

de contratar, pero existe un engaño en el modo en que se celebra el negocio jurídico. *Íd.* Es decir, que el dolo incidental solo facilita la celebración del contrato, ya que, sin éste, el contrato de todas formas se hubiera celebrado, aunque bajo distintas condiciones. *Íd.* Este tipo de dolo no invalida el negocio jurídico, pero su autor debe indemnizar el daño causado, salvo que exista dolo recíproco. Art. 294 del Código Civil, 31 LPRA sec. 6213; *800 Ponce de v. AIG*, 205 DPR 163, 182 (2020).

Por su parte, el dolo grave es "la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado". Art. 292 del Código Civil, 31 LPRA sec. 6211. A diferencia del caso anterior, el dolo grave se refiere a aquellos casos en los que no existe predisposición de la parte para realizar el acuerdo, sino que ésta presta su consentimiento precisamente por la acción u omisión intencional constitutiva del dolo. En estos casos, si la acción u omisión no provoca la realización del negocio jurídico, la parte afectada podrá reclamar los daños y perjuicios que haya sufrido. *Íd.* El dolo ha sido entendido como "todo un complejo de malas artes, contrario a las leyes de la honestidad e idóneo para sorprender la buena fe ajena, generalmente en propio beneficio". *S.L.G. Ortiz-Alvarado v. Great American,* 182 DPR 48, 63 (2011) (citando a L. Díez-Picazo, <u>Fundamentos del Derecho Civil Patrimonial</u>, 6ta ed. Navarra, Ed. Thomson/Arazandi, 2007, Vol. I, pág. 170). Además, el silencio puede constituir dolo. En ese sentido, es necesario que "exista por la razón que sea, un deber de informar (así conforme la buena fe o a las opiniones del tráfico). Como vemos entonces, para que se configure el dolo no es siempre necesaria una acción afirmativa. "[C]allar sobre una circunstancia importante" constituye dolo". *Íd.,* a la pág. 60 (citas omitidas).

El elemento objetivo del dolo puede consistir en cualquier conducta como astucias, argucias, mentiras, sugestiones, artificios, invención de hechos falsos, ocultación de los existentes o en suministrar referencias incompletas de éstos. *Íd.*, a las págs. 64-65. El dolo "se caracteriza como la infracción voluntaria y consciente de un deber jurídico que ocasiona al otro contratante un perjuicio del que debe responder". *Íd.* a la pág. 68 (citando a *Márquez v. Torres Campos,* 111 DPR 854, 865 (1982)). Respecto al análisis sobre la existencia de dolo que vicia el consentimiento, nuestro máximo foro ha expresado lo siguiente:

> [S]*e debe considerar, entre otras cosas, la preparación académica del perjudicado así como su condición social y económica, y las relaciones y el tipo de negocios en que se ocupa. Puede ser que en un caso, el dolo no surja de un simple hecho, sino del conjunto y la evolución de las circunstancias y los manejos engañosos.* **Finalmente, el dolo, al igual que el fraude, no se presume, pero eso no significa necesariamente que tenga que probarse directamente. Puede establecerse mediante inferencia o por evidencia circunstancial.** *García Reyes v. Cruz Auto Corp., supra,* a las págs. 887-888 (2008) (citas omitidas). Véase, *S.L.G. Ortiz-Alvarado v. Great American, supra,* a la pág. 64.

Por consiguiente, la sentencia de invalidez de un negocio jurídico genera para las partes contratantes la obligación de restituir lo recibido, con sus frutos y productos. Art. 346 del Código Civil, 31 LPRA sec. 6316. Dicha sentencia también autoriza a la parte que no originó su invalidez, a ser resarcida de los daños sufridos. Art. 347 del Código Civil, 31 LPRA sec. 6317.

**-D-**

Al interpretar un contrato, si sus términos son claros y no dejan duda sobre la intención de las partes, debe prevalecer el sentido literal de sus palabras. Art. 354 del Código Civil, 31 LPRA sec. 6342. No obstante, "[s]i las palabras parecen contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo

expresado". *Íd.* El Tribunal Supremo de Puerto Rico ha manifestado que:

> *[C]uando los términos de un contrato son claros y no dejan dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación, por lo que se está al sentido literal de las cláusulas pactadas. Es decir, se debe seguir y respetar la letra clara del contrato cuando la misma refleja inequívocamente la voluntad de las partes. Cruz, López v. Casa Bella y otros, supra,* a la pág. 995.

Por consiguiente, solo es necesario juzgar la intención de los contratantes cuando no sea posible determinar la voluntad de las partes con la mera lectura literal de las cláusulas contractuales. *Íd.* En ese sentido, será necesario juzgar la intención de los contratantes a la luz de los actos anteriores, coetáneos y posteriores al contrato, así como las circunstancias indicativas de la voluntad de las partes. *Cruz, López v. Casa Bella y otros, supra,* a las págs. 995-996.

Por otro lado, nuestro ordenamiento reconoce los contratos con cláusulas no negociadas. De manera que, se consideran cláusulas generales aquellas contenidas en un formulario que ha diseñado y redactado una de las partes. Art. 1247 del Código Civil, 31 LPRA sec. 9801. A tales efectos, las cláusulas generales deben ser asequibles para el contratante que no las ha redactado. *Íd.* Por tal razón, "[e]l contrato con cláusulas generales se interpreta en sentido desfavorable a la persona que las redacta y en favor de la persona que tuvo menor poder de negociación". *Íd.*

En particular, el Contrato de Adhesión es aquel en el que la parte aceptante se ve precisada a aceptar un contenido predispuesto. Art. 1248 del Código Civil, 31 LPRA sec. 9802. Así, sus cláusulas deben ser interpretadas en sentido desfavorable de quien las redactó, y en favor de la persona que se vio precisada a aceptar su contenido. *Íd.*; *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 176-177 (2011).

**-E-**

En virtud del contrato de compraventa, la parte vendedora asume la obligación de transferir a la parte compradora el domino de un bien, mientras que esta se obliga a pagarle un precio cierto. Art. 1274 del Código Civil, 31 LPRA sec. 9941; *Bco. Popular v. Registrador*, 181 DPR 663 (2011).  Las obligaciones del vendedor son:

> *(a) entregar inmediatamente el bien con sus accesorios, libre de todo gravamen, en el lugar y el tiempo convenidos o donde se encuentre el bien en el momento del otorgamiento;*
> *(b) transferir al comprador el dominio del bien;*
> *(c) **garantizar al comprador que el bien vendido tiene las cualidades prometidas y que está libre de defectos que disminuyen o destruyen su valor o la aptitud para su uso ordinario o convenido**. Una disminución insignificante del valor o la aptitud no se toma en cuenta.*
> *Cuando un defecto principal se descubre dentro del período de la garantía, se presume que el defecto estaba ya presente en el momento que el riesgo pasó al comprador.*
> *La garantía se extiende durante el tiempo comprendido en el plazo de prescripción de la acción ejercitada por razón de la garantía o durante el tiempo que haya fijado el Departamento de Asuntos del Consumidor o cualquier otra agencia gubernamental;*
> *(d) entregar al comprador todos los documentos que sirven para probar el dominio;*
> *(e) proporcionar al comprador toda la información sobre el objeto vendido, especialmente la relacionada con los linderos, privilegios, y cargas;*
> *(f) otorgar las escrituras públicas o privadas requeridas por los usos y las particularidades de la venta; y*
> *(g) pagar los gastos de la entrega y del otorgamiento de las escrituras, a menos que sea la parte compradora quien escoja el notario autorizante, salvo pacto distinto.*
> Art. 1287 del Código Civil, 31 LPRA sec. 9991.

A tenor con lo anterior, cuando el vendedor o comprador incumple con sus obligaciones, legitima al otro a optar por la resolución del contrato, conforme al Art. 1255 del Código Civil, 31 LPRA secs. 9823. J. R. Vélez Torres, <u>Curso de Derecho Civil: Derecho de Contratos</u>, San Juan, Universidad Interamericana de Puerto Rico, 2007, T. IV. Vol II, pág. 142.  Conviene resaltar que, el contrato de compraventa debe cumplir con los requisitos esenciales, es decir, consentimiento, objeto y causa para la validez

de los contratos en general. *Bco. Popular v. Registrador, supra,* a la pág. 672.

**III.**

Por estar íntimamente relacionados entre sí, procederemos a discutir en conjunto los tres señalamientos de error objeto del presente recurso.

La parte peticionaria expone que, erró el TPI al declarar No Ha Lugar la Moción de Sentencia Sumaria por entender que existen controversias sobre las obligaciones del peticionario hacia el recurrido durante la compraventa del Can-Am. Además, sostiene que incidió dicho foro al ignorar el hecho de que las partes pactaron que, cualquier manifestación entre estas durante la compraventa no subsistirá a menos que se recoja por escrito, por cuanto lo que conste por escrito constituyen los únicos derechos y obligaciones entre las partes. Así que, señala que al no constar por escrito la obligación del peticionario a realizar gestiones de registro, inscripción del Can-Am, no proceden remedios a esos efectos.

Luego de examinar *de novo* la solicitud de sentencia sumaria presentada por Evenmotor's, así como su respectiva oposición y los anejos que las acompañan, a la luz de lo resuelto por el Tribunal Supremo de Puerto Rico en el caso de *Meléndez González et al. v. M. Cuebas, supra,* resolvemos que ambas mociones cumplen con los criterios que dimanan de la Regla 36.3 de Procedimiento Civil, *supra.* A su vez, nos corresponde evaluar la existencia de algún hecho material controvertible y la aplicación del derecho correspondiente. Para ello, sólo podemos tener ante nuestra consideración aquella evidencia presentada ante el Foro de Instancia. Veamos.

Como relacionamos previamente, el 4 de junio de 2024, el Sr. Rodríguez Sallaberry suscribió un Contrato de Compraventa

con Evinmotor's, mediante el cual este le vendió un vehículo de motor marca Can-Am Maverick 2021, más varios accesorios por la suma de $45,654.88. En particular, el Sr. Rodríguez Sallaberry firmó varios documentos pertinentes a dicha transacción. Ciertamente, el documento intitulado "Acuerdo Suplementario y/o Contingente" contiene una cláusula que establece lo siguiente: "Verifique bien su factura, cualquier representación verbal realizada por el personal de ventas durante la negociación no subsistirá a menos que recoja por escrito en alguno de los documentos antes indicados".[7] Conviene resaltar que dicha cláusula es una de adhesión, la cual debe interpretarse en sentido desfavorable de quien las redactó, es decir, Evinmotor's, y en favor del Sr. Rodríguez Sallaberry al verse precisado a aceptar su contenido.

Ahora bien, el Sr. Rodríguez Sallaberry también firmó el documento intitulado "Clientes de Entidades Financieras Notificación de Riesgo y Relevo de Responsabilidad por Tiempo Transcurrido para Registración y/o Traspaso de Vehículos ante Departamento de Transportación y Obras Públicas".[8] En virtud de este documento, las partes acordaron lo siguiente:

> *El proceso de registrar una unidad nueva o de realizar un traspaso de una unidad usada o dejada en "trade-in", ante el Departamento de Transportación y Obras Publicas (DTOP) conlleva una serie de pasos y gestiones que dependen de la disponibilidad de los documentos requeridos por el DTOP para cada trámite en particular. Entre estos se incluye la necesidad de tener toda la información requerida del cliente, que este haya cumplido con los requisitos exigidos del financiamiento y/o transacción, disponibilidad de certificados de origen, licencias y/o certificados de título, según sea el caso.*
> *Adicionalmente, una vez presentados al DTOP, puede transcurrir un periodo de tiempo prolongado antes de que se realice el tramite y se emita por el DTOP el correspondiente certificado de título, licencia y/o*

---

[7] Apéndice de la Petición de Certiorari, en la entrada (82) del Sistema de Administración y Manejo de Casos del TPI, Anejo VI.
[8] Apéndice de la Petición de Certiorari, en la entrada (87) del Sistema de Administración y Manejo de Casos del TPI, Exhibit 7.

> *permiso del vehículo. El mismo depende de la cantidad de trabajo y recursos de dicha agencia gubernamental.*
>
> *[...]*
>
> *Certificación: Reconozco haber sido notificado del hecho arriba indicado y relevo por este medio a Evinmotor's PR Inc., a sus afiliados, sus empleados, directores u otros oficiales, de cualquier cargo o reclamación que pueda surgir por el tiempo transcurrido y/o dispuesto del mismo.*

Por razón de lo anterior, permanece como hecho en controversia las obligaciones asumidas por la parte peticionaria hacia el recurrido durante la compraventa del Can-Am. Nótese que dicho documento es pertinente a la gestión a ser realizada ante el DTOP, cuya realización Evinmotor's niega. Asimismo, reiteramos la manifiesta discrepancia entre la fecha de obtención del certificado de título y licencia (4 de mayo de 2024)[9] y la fecha del Contrato de Compraventa (4 de junio de 2024). Debido a ello, persiste la evidente controversia respecto a por qué y cómo se obtuvo la licencia y el marbete, si el vehículo no es registrable para transitar la vía pública. En este sentido, el Informe de Investigación de la Policía de Puerto Rico concluye que: "[el] vehículo no es registrable. Especificado por el manufacturero. No tiene sello federal".[10]

Entonces, surge del expediente que los accesorios adicionales ("Street Kit") que Evinmotor's "recomendó, vendió e instaló" al Can-Am objeto del Contrato de Compraventa, incluía "luces de frenos, espejo retrovisor, luces direccionales, cristal delantero completo, cinturones de seguridad, entre otras cosas", a fin de que "el vehículo pasara la inspección de CESCO para obtener tablilla, marbete y licencia".[11] Por consiguiente, existe controversia si la parte peticionaria asumió verbalmente o por escrito, la obligación de gestionar el registro, tablilla, licencia y

---

[9] Entrada (87) del Sistema de Administración y Manejo de Casos del TPI, Exhibit 2.

[10] Apéndice de la Petición de Certiorari, en la entrada (87) del Sistema de Administración y Manejo de Casos del TPI, Exhibit 8.

[11] Apéndice de la Petición de Certiorari, en la entrada (22) del Sistema de Administración y Manejo de Casos del TPI.

marbete del vehículo Can-Am adquirido por el Sr. Rodríguez Sallaberry, así como su entrega en condiciones aptas para ser utilizados legalmente por la vía pública. Al igual que si la condición de que el vehículo Can-Am pudiera transitar por la vía pública fue una cualidad prometida y convenida por Evinmotor's y el señor Rodríguez Sallaberry. Adviértase, que para que un contrato se considere válido, se requiere que concurran: (1) consentimiento de los contratantes, (2) objeto cierto del contrato y (3) la causa de la obligación que se establezca. Además, el contrato queda perfeccionado desde que las partes manifiestan su **consentimiento sobre el objeto** y la causa. De manera que, existe controversia sobre si la parte demandada cometió dolo o engaño en el procedimiento de venta del vehículo Can-Am.

En resumen, en atención a los documentos suscritos por las partes, como por ejemplo: las declaraciones juradas, "Buyers Order", "Clientes de Entidades Financieras Notificación de Riesgo y Relevo de Responsabilidad por Tiempo Transcurrido para Registración y/o Traspaso de Vehículos ante Departamento de Transportación y Obras Públicas", "Acuerdo suplementario y/o contingente", "Contestación a Primer Pliego de interrogatorios y producción de documentos", Informe de Investigación de la Policía de Puerto Rico y los documentos de registro del vehículo Can-Am, estos generan una controversia evidente respecto a hechos medulares del caso ante nos. Así pues, convenimos con el criterio del Foro recurrido al evaluar el derecho aplicable; además de concluir que existían 12 controversias sobre hechos o alegaciones materiales del caso que impidiesen el uso del mecanismo de sentencia sumaria. En vista del análisis que precede, concluimos que los errores señalados por la parte peticionaria no fueron cometidos.

**IV.**

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, expedimos el auto de *Certiorari* y confirmamos la Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones